My name is Hillary Hahn and I represent the petitioner and if I may I'd like to try to reserve two minutes for rebuttal. You'll have to keep an eye on the clock yourself. I will. Both in his asylum application and in his testimony before the asylum office, Mr. Barrera Cruz testified truthfully that he left El Salvador because he feared the guerrillas who had targeted his family because of that family's involvement in the civil patrol. Later, after he was placed in removal proceedings, he also discussed another reason that he had fled El Salvador, the violence that he suffered at the hands of his father and other people in society because of his sexual orientation. He discussed this both in a supplemental declaration that he submitted to the immigration court and in his testimony before the court. That evidence was internally consistent and it was corroborated by documentary evidence in the record. Well, now, wait a minute. The evidence of his sexual orientation was somewhat inconsistent, I thought, because sometimes he said he was homosexual and sometimes he said he was bisexual. Maybe that is an inconsistency? For the most part, I think he testified that he considered himself to be bisexual. There are different places at which the background evidence talked about treatment of homosexuals. I think he talked about in his testimony that he was viewed as a homosexual or he would be viewed as a homosexual, but I think he's been consistent in how he self-identifies. How do you get around the inconsistency between his claim in the asylum application that it was all because his family was threatened by guerrillas because of their work in the civil patrol and the somewhat later-blooming allegation regarding his sexuality? I think that that omission was explained, and I think in his arguments to the board, he provided an explanation as to why he had omitted that evidence previously. Because it was a family matter? In part, yes, in part. And I think the problem here is that the board didn't consider that explanation in a reasoned manner. He argued, first of all, to the board, yes, that it was considered a family matter in El Salvador, and he assumed that it wasn't relevant in the legal system here in the United States. And that's corroborated by the background evidence in the record that shows that in El Salvador, domestic violence and violence against homosexuals is not prosecuted. The IG considered that in making his determination of whether or not Mr. Cruz was credible. I guess my main concern or issue is it appeared at different parts in your brief to this court that you argued there might be two explanations for his inconsistent explanation. One was that this was a family matter, his sexual orientation was a family matter, he didn't think he needed to disclose it. Then there was an additional reference to the PTSD. Right. Now, is it your position that the PTSD is a separate explanation or is evidence of the first explanation? I think it's sort of both. I mean, I think primarily it's a separate explanation because in the psychological evaluation, the evaluator talks about the fact that he has struggled with his sexual identity and because of his past experiences is still in the process of exploring it and so hasn't been able to publicly discuss his sexual orientation. But I think it also goes to the other explanation, the fact that he assumed that he couldn't talk about it. I must have missed something. PTSD, post-traumatic stress disorder, usually requires life-threatening trauma. Where is the evidence of life-threatening trauma? Well, he testified that his father beat him repeatedly in El Salvador because of his sexual orientation. Once he had been caught having a sexual relationship with another boy and once that came out, his father beat him. And beyond that, I mean, I think that in this particular case, the evaluation is undisputed. I mean, the evaluation came into the record. It was admitted without objection. But I guess, so the IJ, do you agree or disagree? I mean, you mentioned the report three times and the BIA mentioned it as well in their decision. So doesn't that show that it was adequately considered? I don't think so. Why not? Because the immigration judge discussed it only in his statement of facts. I mean, he mentioned the fact that it was submitted and he talked, you know, in a very short paragraph about, you know, the contents of it. But in his actual legal analysis and his discussion of the adverse credibility determination and in the discussion of whether that omission was reasonably explained, he didn't discuss it at all. He didn't talk, he didn't refer to the evaluation. He didn't talk about the fact that he suffers from post-traumatic stress disorder. So I don't think the immigration judge considered it in his actual legal analysis at all. The post-traumatic stress syndrome is the explanation for Cruz not mentioning his homosexuality when he first applied for asylum. I thought you said a moment ago that he knew about it, but he didn't mention it because he thought it wasn't relevant for immigration purposes. That's two different stories. Well, I think there are two separate explanations. I mean, two kind of related explanations as to why he didn't talk about it. You know, one, that he assumed that it wasn't relevant because of his past experiences and also because he wasn't probably in a psychological position to be able to do so. But I think the... Why was he not in a psychological? Because the post-traumatic stress syndrome took away from him the memory or the knowledge that he had a different sexual orientation, whatever it was? No, but that it was very difficult for him to talk about that because of what had happened to him in the past as a result of that being disclosed. Couldn't the immigration judge have fairly construed that your client was abandoning the fear-of-guerrilla basis for asylum? Well, he certainly didn't emphasize it, and primarily because... Did or did not emphasize it? Did not emphasize it at his hearing, primarily because 17 years had passed since he applied for asylum, and, you know, the conditions in El Salvador had changed such that well-founded fear of guerrillas isn't really a viable claim. But he mentioned it. I mean, he never stated that that wasn't the case and that wasn't part of the reason that he left the country. So certainly he de-emphasized it. Well, did his counsel... He had counsel at the hearing, didn't he? Yes. Did his counsel at the hearing ever say, my client continues to rely upon both grounds? Well, when he testified, the question he was... When he was asked why he left El Salvador, and this is at page 141 of the administrative record, he stated, my father was serving in the civil patrol of El Salvador and the country was at war. He was having problems. One of his friends was killed, so he moved from that town. And then he was asked what the other reasons were that he left, and then he started to talk about his problems with his father because of his sexual orientation. So I don't think he abandoned it, but he certainly focused on the claim that, you know, in 2008 had more legal viability. And if I may, I'd like to just reserve the last couple minutes. May it please the Court. Charles Green for the Attorney General. Two years after Barrera Cruz entered the United States, he filed an asylum application claiming only that he feared guerrillas in his native El Salvador. You're not claiming a statute of limitations, are you? No, what I'm saying is that he filed his application more than one year after he entered the United States. No, Your Honor. At the time, that was not an issue. Some 12 years later, at his asylum interview, he made only the same claim regarding guerrillas. Two years after that, he finally, for the first time, raised the fear regarding his sexual orientation. Because of this inconsistency, material inconsistency in his story, the agency determined that he was not credible and no reasonable adjudicator would be compelled to conclude otherwise. Was he asked at the IJ hearing about the political persecution aspect of his claim? Right at the beginning, he was, Your Honor. His counsel and his testimony, he did mention a little bit about guerrillas right at the beginning. Let me be more focused. Did government counsel ever ask him at the IJ hearing, are you abandoning your claim based on political persecution? No, Your Honor. He was never asked whether he was abandoning that claim. The immigration judge determined, because of the inconsistencies in his statements regarding guerrillas, in other words, he made some more involved statements regarding guerrillas and the personal threat to himself in his asylum application and in the interview notes. However, when he came to testify at the hearing, he only testified broadly that there was some threat to his godfather and that there was no personal threat. And the immigration judge did pick up on that and determined based on that that he was abandoning the claim. Was he ever asked by government counsel at the hearing whether the facts he had earlier laid out in support of the political persecution claim were in fact false? No, Your Honor. It seemed like a pretty obvious question to ask. Well, maybe so, Your Honor. But, in fact, it was not asked. There was an assumption there, certainly, but that particular question was not asked. Regardless, he did make these very general statements, and based on that, and as we've now heard, he has abandoned that claim. Well, I didn't hear his counsel say that at all. He can tell us during his rebuttal time, but I didn't hear him say that at all. Yes, Your Honor. The length of time that Mr. Brera-Cruz was in the country, it was 14 years until his asylum application, rather, asylum interview. It was another two until he filed his supplemental declaration. Based on that, the immigration judge and the board did not agree that his reluctance and the psychological evaluation, the post-traumatic stress disorder, were a plausible explanation for why he had not come forward with these particular fears beforehand. Especially because in the asylum interview, he was asked a number of open-ended questions to elicit just such additional fears. Granted, they focused mainly on his fears of gorillas. However, there were five open-ended questions, two of which were noted as examples by the board. And in response to those, he replied in the negative. He said, no, there's nothing else. At the time of his asylum interview, some 12 years later after his application, did he have counsel in? Not at the asylum interview, Your Honor. Did the asylum officer testify? No, Your Honor. The notes were simply used? That's correct. The IJ did question Cruz about the differences between his earlier claim and the current claim. Is that correct? Yes, Your Honor. One of the questions I asked your colleague is whether this PTSD was offered as a separate or additional explanation in addition to the family matter, or whether it was in support of the first explanation or to buttress the first explanation, which is that his sexual orientation was a family matter. Either way, the IJ had to adequately consider it, it seems, and especially if it was an additional explanation. What's your position? I mean, it seems under SOTOLARTE that the IJ or the VIA needed to specifically address the reason, and it's an issue if they didn't. Where in either the IJ or VIA's decisions were the findings of the report specifically addressed? I know it was mentioned three times, but is there anywhere where those findings were specifically addressed? Yes, Your Honor. The issue with SOTOLARTE, of course, was that there was no discussion whatsoever of his explanation. Here there was a discussion of his explanation, and in particular regarding the psychological evaluation, when the immigration judge mentioned it, as you just said three times, the first time he said this was submitted into evidence. The second time, on Record Site 111, he specifically said that the record was the psychological evaluation was prepared for the hearing. Barrera-Cruz did not go back for treatment afterwards. And then on Record Site 113, he specifically mentioned several factors, other factors that might go towards its weight. It was based upon sworn statements to our interview in Spanish and clinical observations. And then at the end of that paragraph, where he had discussed the documentary evidence, he specifically stated that along with all of the previously noted documentary evidence, I've reviewed them and they've been considered when rendering this decision. And the board then also specifically in the opinion mentioned the psychological evaluation as one thing that the immigration judge considered. That's actually right at the bottom. And so is it your position that a discussion of the findings was not necessary? Well, Your Honor, I think this shows that the immigration judge and board considered the psychological evaluation and the findings thereof. And that's all that's required under SOTO-ALARTE in your view? Yes, Your Honor. As this Court has held many times, the board and the immigration judge do not have to write an exegesis. They simply need to include enough information so that a reviewing court can feel comfortable they have reviewed it. This is a pre-real ID case, isn't it? It is, Your Honor. If the Court has no more questions, just to sum up, the agency had a specific cogent reason for disbelieving Mr. Barrera-Cruz. And because of that, this Court should deny his petition. Thank you. Thank you very much. Thank you. Thank you. Just a couple of points. First, to address your point, Judge Hawkins, the immigration judge in his decision explicitly found that Mr. Barrera-Cruz's testimony about the guerrillas was false. We made an argument to the board that there was no basis for that finding, and the board didn't adopt that finding. So there's no determination by the agency, at least before the Court, that that testimony was false, and we maintain that it wasn't. Now, even to the extent that Mr. Barrera-Cruz maybe de-emphasized his claim based on the guerrillas before the immigration court, to the extent that it's an omission, the board still must address his explanation for that omission in a reasoned manner, and we still maintain that they didn't. Well, is it your position, I thought you mentioned a moment ago, to change conditions in the country by the time the 2008 hearing rendered useless as an asylum basis the prior persecution by the guerrillas? Yes. Yes. But I'm also referring to the omission of his second-  Well, I mean, we didn't make any argument to the agency that he could establish a well-founded fear on that basis. I'm new at this, so I just need to ask, are you abandoning that claim or not? Well, we're not abandoning, we're not claiming that it's not true. It was part of the reason that he left the country, but we're not claiming that he can establish that he has a well-founded fear of persecution based on fear of the guerrillas at this point. But I think that the biggest flaw in the board's decision was the failure to address that explanation in a reasoned manner. Which explanation? The explanation as to why he didn't talk about his sexual orientation at the asylum interview and in his asylum application. Because of the PTSD. Because of the PTSD. And he also made the argument that he didn't become aware of the fact that he could apply based on his sexual orientation until he consulted an attorney. And I think the agency failed to address that in a reasoned manner as well. All they said was the law allowed homosexuals to be a particular social group prior to the time of the asylum interview. That's not really the point. The point isn't whether the law allowed that. The point is whether it was reasonable for him under all of the circumstances to have learned that before he consulted an attorney. And just one really quick point. In terms of the discussion of the psychological evaluation, even though the board isn't required to discuss the psychological evaluation at length, there's nothing for this court to analyze. There's nothing for this court to review if the agency makes no findings whatsoever as to the relevance or lack of relevance of that psychological evaluation. And I think that's the problem with it only being mentioned in the statement of facts. Thank you. Thank you very much, counsel. The case of Barrera-Cruz v. Holder will be submitted.
judges: Hawkins, Bea, Murguia